UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABRAHAM CAMPOS, EDER GORDILLO, PAULINO CARPINTERO, SAMUEL HERRERA, YONI DE LOS SANTOS, SEGUNDO CALLE, JENARO CAMPOVERDE, PELLUMB KATANOLLI, CESAR SUPACELA, NICOLAS ZHAGNAY, CRISTIAN ASITIMBAY, MARIO ASITIMBAY, EDUARDO YUNGA, VLADIMIR YUNGA, DIEGO A. ESTRADA, VICTOR GONZALEZ, MILTON QUIZHPILEMA, FELIPE VEGA-LOYOLA, EDISON MACANCELA, and BRYAN MACANCELA,<br><br>        Plaintiffs — Judgment Creditors,<br><br>                v.<br><br>BESIM KUKAJ, SP REALTY INVESTMENTS LLC, and DIAMOND GLOBAL MANAGEMENT LLC,<br><br>        Defendants. | Case No. 22 Civ. 5993 (DLC)<br><br>Related cases:<br>1:18-cv-04036 (JGK) (KHP)<br>1:18-cv-07507 (JGK) (KHP) |

## MEMORANDUM OF LAW IN SUPPORT OF JUDGMENT BY DEFAULT

POLLOCK COHEN LLP
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
*Attorneys for Plaintiffs –*
    *Judgment Creditors*

**TABLE OF CONTENTS**

I.   Standard ................................................................................................................1

II.  Jurisdiction............................................................................................................1

III. Plaintiffs have established the fraudulent conveyances. .......................................3

IV.  Plaintiffs have established actual intent to defraud. .............................................6

     A.   Intent to Defraud .........................................................................................7

     B.   Attorneys' Fees ...........................................................................................9

V.   The Court should enter judgment against all Defendants...................................11

VI.  No inquest hearing is needed..............................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Cadle Co. v. Newhouse*,
   74 Fed. App'x 152 (2d Cir. 2003) .................................................................................11

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
   342 F.R.D. 84 (S.D.N.Y. 2022) ......................................................................................10

*Consumer Fin. Prot. Bureau v. MacKinnon*,
   569 F. Supp. 3d 162 (W.D.N.Y. 2021) ............................................................................6

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .........................................................................................................3

*Deflora Lake Dev. Assocs., Inc. v. Hyde Park*,
   2016 WL 7839191 (S.D.N.Y. June 9, 2016) ...................................................................7

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
   323 F. Supp. 3d 393 (S.D.N.Y. 2018) .............................................................................8

*Epperson v. Ent. Express, Inc.*,
   242 F.3d 100 (2d Cir. 2001) ............................................................................................1

*Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,
   2022 WL 413229 (S.D.N.Y. Feb. 9, 2022) ....................................................................10

*H. Daya Int'l, Co. v. Do Denim LLC*,
   2022 WL 974382 (S.D.N.Y. Mar. 31, 2022) ...................................................................4

*In re Kaiser*,
   722 F.2d 1574 (2d Cir. 1983) ..........................................................................................8

*In re Kovler*,
   253 B.R. 592 (Bankr. S.D.N.Y. 2000) ......................................................................9, 10

*In re Level 8 Apparel, LLC*,
   2021 WL 279620 (Bankr. S.D.N.Y. Jan. 26, 2021) ........................................................3

*In re Longfin Corp. Sec. Class Action Litig.*,
   2020 WL 4345731 (S.D.N.Y. July 29, 2020) .................................................................1

*In re Saba Enters., Inc.*,
   421 B.R. 626 (Bankr. S.D.N.Y. 2009) ..........................................................................10

*In re Thakur*,
   498 B.R. 410 (S.D.N.Y. 2013) ........................................................................................6

*Kim v. Ji Sung Yoo*,
   311 F. Supp. 3d 598 (S.D.N.Y. 2018) ..............................................................2, 5, 7, 10

*McGillicuddy v. Laidlaw, Adams & Peck*,
   1995 WL 1081307 (S.D.N.Y. Aug. 14, 1995) ..............................................................12

*Mitchell v. Garrison Protective Servs., Inc.*,
  819 F.3d 636 (2d Cir. 2016) ..................................................................................4, 6

*Pearlstein v. BlackBerry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ...............................................................10

*Priestley v. Panmedix Inc.*,
  18 F. Supp. 3d 486 (S.D.N.Y. 2014) ...............................................................................8

*Rosario v. 251 E. 123rd St. Realty, LLC*,
  2021 WL 2169020 (S.D.N.Y. May 27, 2021) ...............................................................10

*RTC Mortg. Tr. 1995-S/N1 v. Sopher*,
  171 F. Supp. 2d 192 (S.D.N.Y. 2001) .....................................................................10, 11

*Sagax Dev. Corp. v. ITrust S.A.*,
  2022 WL 2663488 (S.D.N.Y. July 11, 2022) ...............................................................10

*Stochastic Decisions, Inc. v. DiDomenico*,
  995 F.2d 1158 (2d Cir. 1993) ........................................................................................11

*Sullivan v. Kodsi*,
  373 F. Supp. 2d 302 (S.D.N.Y. 2005) .............................................................................7

*Themis Capital v. Democratic Republic of Congo*,
  2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ................................................................10

*Trustees of Unite Here Nat. Health Fund v. New Mayflower Corp.*,
  2009 WL 2222871 (S.D.N.Y. July 24, 2009) ................................................................13

*United States v. Alfano*,
  34 F. Supp. 2d 827 (E.D.N.Y. 1999) ...............................................................................7

*United States v. Lax*,
  414 F. Supp. 3d 359 (E.D.N.Y. 2019) ...........................................................................11

*United States v. Watts*,
  786 F.3d 152 (2d Cir. 2015) ............................................................................................4

**Statutes and Rules**

2019 Sess. Law News of N.Y. Ch. 580 (A. 5622) § 7 .........................................................3

NY CPLR 301 ......................................................................................................................3

NY CPLR 302 ..................................................................................................................2, 3

NY Debt. & Cred. Law § 273-a............................................................................................3

NY Debt. & Cred. Law § 276................................................................................................6

NY Debt. & Cred. Law § 276-a............................................................................................9

NY Debt. & Cred. Law § 278(1) ........................................................................................12

Plaintiffs respectfully submit the following Memorandum of Law in support of their motion for a default judgment.

## I. Standard

As detailed by this Court, the following standard applies when a defendant has defaulted:

> Upon entry of default, a defendant is deemed to have admitted liability to the plaintiff. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). Accordingly, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. *Finkel v. Romanowicz*, 557 F.3d 79, 84 (2d Cir. 2009). Nonetheless, a court must satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed. …
>
> With respect to damages, a court does not accept the allegations as true, but "must instead conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). A court must engage in this inquiry "[e]ven when a default judgment is warranted based on a party's failure to defend." *Id*. Making this determination "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id*.

*In re Longfin Corp. Sec. Class Action Litig.*, 2020 WL 4345731, at *3 (S.D.N.Y. July 29, 2020) (Cote, J.).

## II. Jurisdiction

This case falls under the "enforcement branch of ancillary jurisdiction." *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 105 (2d Cir. 2001). "Where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party." *Id*. at 106.

Here, Plaintiffs have already secured a judgment against Defendant Besim Kukaj. However, Judgment Debtor **Besim Kukaj** fraudulently transferred assets – i.e., the Subject Property located at 36 Locke Drive in the Town of Pittsford, New York – to Defendant **SP Realty Investments LLC** ("SP") and, from there, to Defendant **Diamond Global Management LLC** ("Diamond"). *See* Declaration of Adam Pollock in Support of Judgment by Default, dated November 11, 2022 ("Pollock Dec.") ¶¶ 12–17. Accordingly, this Court has ancillary jurisdiction to permit the recovery by Plaintiffs, as Judgment Creditors of Defendant Kukaj, to pursue Kukaj's assets, even in the hands of third parties. *See, e.g.*, *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 602–603 (S.D.N.Y. 2018):

> Plaintiffs … are judgment creditors from a previously adjudicated Fair Labor Standards Act litigation … (the "FLSA Action"). Plaintiffs have alleged that one of the FLSA Action judgment debtors … violated fraudulent conveyance sections of the New York Debtor and Creditor Laws ("DCL") when he transferred real property interests to members of his family….
>
> Plaintiffs filed their [new] complaint. ... Plaintiffs' complaint alleged that [the judgment debtor] fraudulently conveyed three pieces of property…. Invoking the Court's ancillary enforcement jurisdiction to secure payment on a judgment award of $2,672,657.30 entered against [the judgment debtor] and for Plaintiffs in the FLSA Action, Plaintiffs sought to return the alleged fraudulently conveyed property interests….

*aff'd sub nom. Tae H. Kim v. Ji Sung Yoo*, 776 F. App'x 16 (2d Cir. 2019).

The Court also has personal jurisdiction over all defendants because they do business here and have relevant contacts with the State. The entire chain of fraudulent transfers at issue here pertained exclusively to the Subject Property, which is located in New York. *See* NY CPLR 302(a)(4) (providing for jurisdiction over anyone that "owns, uses or possesses any real property situated within the state"). And, as detailed below,

the Defendants have all committed fraudulent transfers in connection with this New York property, and within the State of New York. *See* NY CPLR 302(a)(2). In addition, Defendant Diamond is a New York Limited Liability Company and is therefore subject to general jurisdiction here. *See* NY CPLR 301; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Further, Defendant Kukaj was operating approximately a dozen restaurants in New York at issue in the underlying litigation, and still runs at least two restaurants in New York. (Pollock Dec. ¶ 7.)

### III. **Plaintiffs have established the fraudulent conveyances.**

The transfers at issue were constructive fraudulent conveyances under NY Debt. & Cred. Law § 273-a. The version of the Debtor and Creditor Law that was in effect at the time of the fraudulent transfers alleged herein provides that:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

NY Debt. & Cred. Law § 273-a.[1]

---

[1] The Debtor and Creditor Law has since been amended, but the version that was in effect at the time of the transfer applies because the transfers were made before April 4, 2020. *See* 2019 Sess. Law News of N.Y. Ch. 580 (A. 5622) § 7, effective Apr. 4, 2020 ("This act … apply to a transfer made or obligation incurred on or after such effective date, but shall not apply to a transfer made or obligation incurred before such effective date."). *See, e.g.*, *In re Level 8 Apparel, LLC*, 2021 WL 279620, at *5 (Bankr. S.D.N.Y. Jan. 26, 2021) ("The amended statute applies to transactions occurring on or after April 4, 2020. As such, the amendments are inapplicable to this matter.") (citation omitted).

Unless otherwise indicated, citations in this brief to the NY DCL are to the provisions applicable here and not the current versions.

"To prevail under [DCL § 273–a] a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d 636, 641 (2d Cir. 2016) (citations and internal quotations omitted).

*The conveyances were made without fair consideration*. As demonstrated in the accompanying Pollock Declaration and its exhibits, Defendant Kukaj conveyed the Subject Property to Defendant SP without fair consideration. "Fair consideration exists where the following three elements are satisfied: first, the recipient of the debtor's property must either ... convey property in exchange or ... discharge an antecedent debt in exchange; second, such exchange must be a fair equivalent of the property received; and third, such exchange must be in good faith." *H. Daya Int'l, Co. v. Do Denim LLC*, 2022 WL 974382, at *7 (S.D.N.Y. Mar. 31, 2022) (citations omitted).

Here, the Property was first transferred from Defendant Kukaj to Defendant SP Realty for a mere $1, and then "sold" to Defendant Diamond for far less than the market value of the Property. (Pollock Dec. ¶ 14.) Notably, although Defendant Kukaj paid $319,000 for the property in 2018, SP Realty apparently sold the property to Defendant Diamond in 2020 for only $249,450. (*Id.* ¶ 16.) Both conveyances were clearly made without fair consideration because neither exchange was "a fair equivalent of the property received." *United States v. Watts*, 786 F.3d 152, 164 (2d Cir. 2015).

Further, these exchanges were not in good faith. Both "purchasers" were clearly aware of Defendant Kukaj's improper purpose and Plaintiffs' claims. The Defendant companies are (purportedly) run by Defendant Kukaj's wife and his criminal co-conspirator, both of whom are privy to the details of Kukaj's misconduct and Plaintiffs' resulting litigation. (Pollock Dec. ¶¶ 15, 19.) <u>In addition, Defendant Kukaj clearly maintained control over the Subject Property even after the purported sale—he refinanced a mortgage on the property in his own name with a principal balance that was substantially more than the purchase price</u>.[2] (*Id.* ¶ 18.) This "Loan Modification Agreement" between Kukaj and Freedom Mortgage even expressly noted it "[b]eing the same property as conveyed from SP Realty Investments LLC [Kukaj's wife's company] to Diamond Global Management LLC [Kukaj's co-conspirator's company] as set forth in Deed Instrument #201804020432 dated 03/04/2020, recorded 05/21/2020, Monroe County, NEW YORK." (*Id.* ¶ 18, Ex. I). These are *not* the actions of anyone transacting in good faith.

*The conveyor was a defendant in an action for money damages and the judgment remains unsatisfied*. The second two requirements to show fraudulent conveyance under 273-a are also clearly satisfied. Here, Defendant Kukaj was a defendant in the underlying two actions for money damages which were filed on May 4, 2018 and on August 20, 2018; and he has unquestionably failed to satisfy the judgment. (Pollock Dec. ¶ 12.) While these two cases were pending, Defendant Kukaj transferred the

---

[2] *See, e.g.*, *Kim*, 311 F. Supp. 3d at 613 (factor showing fraudulent conveyance was where the judgment debtor "was just as liable for the Condo's mortgage after the refinancing as before the conveyance, the documentation for which did not unequivocally show that anyone assume[d] and agree[d] to pay the mortgage as part of the consideration.") (quotations omitted).

Subject Property to Defendant SP for stated consideration of $1 on March 7, 2019. (*Id.* ¶ 14.) Because this transfer was made while Defendant Kukaj was a defendant in an action for money damages and he failed to satisfy the ultimate judgment, the transfer was fraudulent. *See, e.g.*, *Mitchell*, 819 F.3d at 641.

*SP and Diamond are not bona fide purchasers.* Here, "insofar as none of the transactions were for fair consideration," neither defendant should be able to "take advantage of any bona fide purchaser defense." *Consumer Fin. Prot. Bureau v. MacKinnon*, 569 F. Supp. 3d 162, 168 (W.D.N.Y. 2021). Moreover, even if these defendants had paid fair consideration for the property, the receipt of the property would still be fraudulent, as both were on notice of the underlying fraudulent conveyance. *See* Pollock Dec. ¶¶ 15, 19; *see, e.g.*, *In re Thakur*, 498 B.R. 410, 421 (S.D.N.Y. 2013) ("facts within the knowledge of the purchaser are of such a nature, as, in reason, to put him upon inquiry, and to excite the suspicion of an ordinarily prudent person and he fails to make some investigation, he will be chargeable with that knowledge which a reasonable inquiry, as suggested by the facts, would have revealed.") (quoting *Miner v. Edwards*, 221 A.D.2d 934, 934 (4th Dep't 1995)). Overall, the transfers were not made for fair consideration and the transferees had knowledge of Plaintiff's claims.

### IV.   Plaintiffs have established actual intent to defraud.

Plaintiffs have also demonstrated actual intent to defraud by Defendants Besim Kukaj, SP Realty Investments LLC, and Diamond Global Management LLC. Accordingly, Plaintiffs are entitled to a judgment against the Defendants for actual fraudulent conveyance under NY Debt. & Cred. Law § 276, as well as attorneys' fees.

### A. Intent to Defraud

In evaluating whether there was intent to defraud, Courts consider several "badges of fraud" that evidence fraudulent intent. *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 306–07 (S.D.N.Y. 2005). These include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.*[3]

Here these "badges of fraud" exist. The property at issue was transferred by Defendant Kukaj after Plaintiffs commenced litigation against him. (Pollock Dec. ¶ 14.) Kukaj transferred the property to a company (purportedly) run by his wife, for no meaningful consideration.[4] (*Id.* ¶¶ 14–15.) The property was then transferred by Kukaj's wife's company to a company run by Kukaj's criminal co-conspirator, at a price below market value and far below what Kukaj had paid to acquire it only two years earlier. (*Id.* ¶¶ 16, 17, 19.) And even after this purported sale took place and was

---

[3] *See also Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018) ("[B]ecause proving actual intent under DCL Section 276 is difficult to establish through direct evidence ..., the relevant intent may be inferred from the facts and circumstances surrounding the transfer. These so-called 'badges of fraud' are facts and circumstances 'so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'") (citations omitted), *aff'd sub nom. Tae H. Kim v. Ji Sung Yoo*, 776 F. App'x 16 (2d Cir. 2019).

[4] *Deflora Lake Dev. Assocs., Inc. v. Hyde Park*, 2016 WL 7839191, at *4 (S.D.N.Y. June 9, 2016) (finding ten dollars to be inadequate consideration for a conveyance of property), *aff'd*, 689 F. App'x 93 (2d Cir. 2017), and *aff'd*, 689 F. App'x 99 (2d Cir. 2017); *United States v. Alfano*, 34 F. Supp. 2d 827, 848 (E.D.N.Y. 1999) (same).

recorded, Kukaj somehow was able to refinance a mortgage on the property in his own name with a principal balance that was substantially more than the purchase price. (*Id.* ¶ 18.) <u>Clearly, Kukaj maintained substantial rights to and control over the property despite the purported transfers</u>.

These facts closely parallel the facts of other cases courts have found to be "brimming with badges of fraud." *See, e.g., In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983) ("The transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property, is a classic badge of fraud. The shifting of assets by the debtor to a corporation wholly controlled by him is another badge of fraud…. The Kaiser fact situation presents both badges of fraud. While insolvent, he purchased two homes with his own money, but had title to both placed in the name of his wife who provided no consideration for these transfers. He continued to retain the possession, benefit and use of the properties and treated them as his own. He created dummy corporations in order to hide his assets. He concealed these assets in his petition for bankruptcy. This scenario clearly indicates a scheme to defraud creditors."); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 469–70 (S.D.N.Y. 2018) (concluding that "the following badges: (1) a close relationship between the parties given their corporate structure, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) … knowledge of its inability to pay …, and (5) the use of dummies, given that [one entity] was only a 'shell company' … are sufficient at this stage to withstand dismissal…."); *Priestley v. Panmedix Inc.*, 18 F. Supp. 3d 486, 503 (S.D.N.Y. 2014) ("First, as noted, the parties to the Security Agreement are closely related. … Second, the transfer was unusual, in

that Panmedix pledged as security all of its present and future assets. Third, the forbearance period of four months was clearly inadequate consideration for this extremely broad grant of security. Fourth, Panmedix was well aware of Priestley's claim …, and it was also aware of its inability to pay her, …. Finally, Panmedix retained the control of its pledged assets after the transfer, and appears to retain them to this day.").

### B.     Attorneys' Fees

The applicable version of the Debtor & Creditor Law also provides for "Attorneys' fees in an action or special proceeding to set aside a conveyance made with intent to defraud," as follows:

> In an action ... brought by a creditor ... to set aside a conveyance by debtor [based on actual intent to defraud] ... in which action ... the creditor ... shall recover judgment ... the creditor ... shall have judgment [for the reasonable attorneys' fees of the creditor in such action] against the debtor and the transferor... in addition to the other relief granted by the judgment.[5]

NY DCL § 276–a. As explained in *In re Kovler*, 253 B.R. 592, 595 (Bankr. S.D.N.Y. 2000):

> [T]he predicate statute, Section 276, is concerned with willful, fraudulent conduct intended to defraud present and future creditors. Section 276–a provides the remedy—an action or special proceeding to set aside the conveyance. But the Legislature obviously recognized that actual fraud may be difficult and costly to prove, that the expense would likely deter creditors from bringing such litigation and that a creditor who successfully prosecuted such an action would be materially harmed by the litigation cost of success. To provide meaningful relief to present or future creditors harmed by a willful, fraudulent conveyance, the Legislature mandated the additional remedy of an award of attorneys' fees in Section 276–a. <u>The award of attorneys' fees provided for in Section 276–a is not a "penalty" …;</u>

---

[5] Section 276-a has since been amended, but the version that was in effect at the time of the transfer applies. *See supra* note 1.

> it is compensatory in nature, designed to make creditors whole not only by compelling reconveyance but by reimbursing creditors for the litigation costs incurred in rectifying the debtor's fraud.

*In re Kovler*, 253 B.R. 592, 597 (Bankr. S.D.N.Y. 2000) (emphasis added).

As demonstrated above, Defendants' intent to defraud is clear. The transactions display multiple "badges of fraud." *See In re Saba Enters., Inc.*, 421 B.R. 626, 644 (Bankr. S.D.N.Y. 2009) ("[T]he existence of several badges of fraud constitutes clear and convincing evidence of actual intent.") (internal quotation marks omitted); *see, e.g.*, *Rosario v. 251 E. 123rd St. Realty, LLC*, 2021 WL 2169020, at *5 (S.D.N.Y. May 27, 2021) ("Plaintiff is entitled to reasonable attorneys' fees…. It is undisputed that the transfer was intrafamily, without consideration, and each defendant knew of the ongoing lawsuit at the time of the transfer. The Court will refer the matter to the designated magistrate judge for an inquest on the proper amount of attorneys' fees."); *Kim*, 311 F. Supp. 3d at 622 (awarding attorneys' fees following fraudulent transfer); *RTC Mortg. Tr. 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 202 (S.D.N.Y. 2001) (same).[6]

---

[6] *See, e.g.*, *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2022 WL 413229, at *14 (S.D.N.Y. Feb. 9, 2022) (approving rates between $742 and $910 for partners; between $405 and $660 for associates; and $150 for "paralegals without specialized skills, training, or experience"); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D. 84, 89 (S.D.N.Y. 2022) (approving rates between $475 and $775 for partners and between $320 and $480 for associates, and observing that the rates "comport with, and are in some cases even lower than, rates awarded in other complex commercial litigation cases in this District."); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (approving rates ranging from $500 for associates to $1,200 for senior partners and noting that "similar rates have been approved by courts in this district"); *Sagax Dev. Corp. v. ITrust S.A.*, 2022 WL 2663488, at *2 (S.D.N.Y. July 11, 2022) (approving a rate of $970 for a partner and reducing the associate's rate to $675); *cf. Themis Capital v. Democratic Republic of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) ("partner billing rates in excess of $1,000 an hour[ ] are by now not uncommon in the context of complex commercial litigation.").

Accordingly, the Court should enter an award of attorneys' fees in the amounts sought in the accompanying Pollock Declaration.

## V.    The Court should enter judgment against all Defendants.

"Under New York law, a creditor may recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance." *Cadle Co. v. Newhouse*, 74 Fed. App'x 152, 153 (2d Cir. 2003); see also *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993) ("The New York Court of Appeals has made it clear that the pertinent provisions of the New York Debtor and Creditor Law provide a creditor's remedy for money damages against parties who participate in the fraudulent transfer of a debtor's property and are transferees of the assets and beneficiaries of the conveyance.").

Here, Plaintiffs seek judgment against fraudulent transferee SP, in the amount of $249,450, which represents its proceeds from the sale of the fraudulently transferred property. *See RTC Mortg. Tr. 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001) ("Under New York law, a creditor may recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets _or_ beneficiaries of the conveyance.") (emphasis added); *United States v. Lax*, 414 F. Supp. 3d 359, 366 (E.D.N.Y. 2019) ("the overwhelming majority of courts have framed this transferee/beneficiary test in the disjunctive, holding that a defendant may be held liable for damages if they are either a 'transferee' or a 'beneficiary' of the conveyance.").

To the extent that Plaintiffs are unable to collect on a money judgment against SP within 90 days of its entry, the Court should allow Plaintiffs to levy execution on the Subject Property. The applicable version of the Debtor & Creditor Law provides that:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> > a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
> >
> > b. Disregard the conveyance and attach or levy execution upon the property conveyed.

NY DCL § 278(1).[7] *See, e.g., McGillicuddy v. Laidlaw, Adams & Peck*, 1995 WL 1081307, at *7 (S.D.N.Y. Aug. 14, 1995) ("a judgment against respondent would place petitioners in the same position with respect to the conveyed property that they would have occupied prior to the conveyance with a judgment…. Thus, a judgment against respondent would not 'enhance' petitioners' position 'beyond what it was' before the conveyance.").

Accordingly, Plaintiffs respectfully request that the Court enter a default judgment against all three Defendants, holding them jointly and severally liable for the fraudulent transfers demonstrated above. In addition, Plaintiffs respectfully request a money judgment against Defendant SP in the amount of $249,450, as well as judgment against Defendant Diamond allowing Plaintiff to levy execution on the Subject Property to the extent their money judgment against SP remains unpaid 90 days after it is rendered.

---

[7] *See supra* note 1, detailing that the law in effect at the time the transfers were made governs this analysis. N.Y. Debt. & Cred. Law § 278(2) also provided that: "A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment." This is not relevant here since fraudulent intent has been clearly established. *See* Section IV.A, *supra*.

## VI. No inquest hearing is needed.

Finally, this Court may decide the default judgment motion based on the evidence before it; no inquest hearing is necessary. *See, e.g.*, *Trustees of Unite Here Nat. Health Fund v. New Mayflower Corp.*, 2009 WL 2222871, at *4 (S.D.N.Y. July 24, 2009) (Cote, J.) ("Although the Court may hold a hearing to assess those damages, a hearing is not required where a sufficient basis on which to make a calculation exists.").

Dated:  November 11, 2022

    POLLOCK COHEN LLP

    By:   /s/ *Adam Pollock*
         Adam Pollock
    111 Broadway, Suite 1804
    New York, NY 10006
    (212) 337-5361
    Adam@PollockCohen.com
    *Counsel for Plaintiffs – Judgment Creditors*